*47
 
 CIRILLO, Judge:
 

 Shirley Nudelman and Samuel Nudelman (the Nudelmans) appeal from an order entered in the Court of Common Pleas of Lackawanna County denying their motion for a new trial.
 
 [1]
 
 We affirm.
 

 The instant appeal arises out of a motor vehicle accident, whereby the Nudelmans filed a civil action against Kevin D. Gilbride seeking recovery for pain and suffering and loss of consortium.
 

 On November 13, 1990, Kevin Gilbride was driving down Vine Street in Lackawanna County. Shirley Nudelman, 63 years of age at the time, having just exited a fashion show at the Masonic Temple, was attempting to cross Vine Street at the intersection of Vine Street and North Washington Avenue. As she proceeded across the intersection she was struck by a car driven by Kevin Gilbride. Mrs. Nudelman suffered nerve damage to her knee and lower left leg. The damaged nerve caused her to experience burning pain and paresthesias in her left leg and knee. She also suffered torn cartilage in her left knee, a fractured right toe, and indentations on the inside of her left knee. The collision also aggravated her pre-existing condition of osteoarthritis in her left knee. Mrs. Nudelman had a long standing history of degenerative arthritic condition in both knees, and was treated with steroid injections approximately ten years prior to the accident.
 

 Shirley Nudelman was taken to Moses Taylor Hospital, by ambulance, treated for her broken toe and released. She was
 
 *48
 
 not given crutches or any other device to assist in walking. After about a week of home rest, she went to her family doctor, Dr. Udomsak, for treatment of the continuing pain she was experiencing. Dr. Udomsak put Mrs. Nudelman on a physical therapy program which did not bring her any relief. Dr. Udomsak next referred her to Dr. Malloy, an orthopedic surgeon. Dr. Malloy ran several tests and recommended steroid injections. Mrs. Nudelman gained little relief from this treatment. About two months latter, she returned to Dr. Malloy, who at that time opined that she was exaggerating her injuries based on her subjective belief that she was suffering from a swollen knee. By objective measurement the knee was only slightly swollen and had no effusion of any kind. Dr. Malloy also admitted that the pain and swelling could have been due to her pre-existing arthritic condition in both knees. At this point Dr. Malloy treated her with anti-inflammatory drugs. As a result of this medication, Mrs. Nudelman developed ulcers and acute pancreatitis, which required three days of hospitalization. Dr. Malloy then resorted to more steroid injections and heat therapy.
 

 The appellee, Kevin Gilbride, did not provide any experts to contradict Dr. Malloy’s testimony. However, on cross-examination of Dr. Malloy and Shirley Nudelman, it was evident that Mrs. Nudelman did not experience constant pain, but sporadic pain in the knee. In fact, the knee functioned painlessly in a range of motion test. The size of the area that the skin was indented was about 3 inches by 2 inches on the inside of the knee. Further, Dr. Malloy stated that Shirley Nudelman had no difficulty in walking. Also, by her six-month visit in December, Dr. Malloy noted that there were no sensory abnormalities such as numbness or lack of sensation.
 

 At trial, the jury was instructed on the issue of comparative negligence. The jury determined that Mrs. Nudelman was fifty percent (50%) comparatively negligent and that Kevin Gilbride was also fifty percent (50%) responsible. The jury then returned a verdict awarding Shirley Nudelman $5,000.00 for past, present, and future physical pain and suffering. The jury awarded zero damages for past, present, and future emotional distress, disfigurement, mental anguish, embarrass
 
 *49
 
 ment, humiliation, and loss of enjoyment
 
 of
 
 life. The jury also awarded zero damages to Samuel Nudelman, the husband of Shirley Nudelman, for loss of consortium. The Honorable Chester T. Harhut molded the jury’s verdict of $5,000.00 to $2,500.00, to reflect the jury’s determination that Shirley Nudelman was fifty percent comparatively negligent.
 

 The Nudelmans moved for a new trial, claiming the jury award was inadequate and against the weight of the evidence. The trial court denied the motion for a new trial, concluding that “[t]he $5,000 bears a reasonable relation to the proven damages.” The Nudelmans also asserted that the jury finding of comparative negligence was without merit. The trial court denied the motion for a new trial. This appeal followed.
 

 The Nudelmans raise the following issues for our review:
 

 (1) Whether the jury award of damages in the amount of twenty-five hundred ($2,500) dollars was manifestly against the weight of the evidence, and failed to justly compensate the plaintiffs for the injuries sustained as a proximate result of the defendant’s negligence, considering the uncontradicted medical evidence presented at trial?
 

 (2) Whether the jury award of twenty-five hundred ($2,500) dollars in damages was contrary to the charge of the court and manifestly against the weight of the evidence?
 

 (3) Whether the jury award of zero damages with regard to the loss of consortium claim by Samuel Nudelman was grossly inadequate and manifestly against the weight of the evidence proffered at trial?
 

 The decision to grant or deny a new trial, because of inadequacy of the verdict, is a decision particularly -within the discretion of the trial court, and will not be overturned on appeal unless the trial court clearly and palpably abused its discretion or erred as a matter of law.
 
 Stevenson v. General Motors Corp.,
 
 513 Pa. 411, 521 A.2d 413 (1987);
 
 see also Botek v. Mine Safety Appliance Corp.,
 
 531 Pa. 160, 611 A.2d 1174 (1992);
 
 Leslie v. Pennco Inc.,
 
 323 Pa.Super. 23, 470 A.2d 110 (1983);
 
 Bortner v. Gladfelter,
 
 302 Pa.Super. 492, 448 A.2d 1386 (1982). Further, a new trial should not be granted because of a mere conflict in testimony, or because the trial judge on the
 
 *50
 
 same facts would have arrived at a different conclusion. A new trial should be awarded when a jury’s verdict is so contrary to the evidence as to shock one’s sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail.
 
 Thompson v. City of Philadelphia,
 
 507 Pa. 592, 597-98, 493 A.2d 669, 672 (1985);
 
 Giovanetti v. Johns-Manville Corp.,
 
 372 Pa.Super. 431, 439-40, 539 A.2d 871, 875 (1988);
 
 S.N.T. Industries, Inc. v. Geanopulos,
 
 363 Pa.Super. 97, 104, 525 A.2d 736, 740 (1987).
 

 As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to. indicate passion, prejudice, partiality, or corruption, or where the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more.
 

 22 Am.Jur.2d,
 
 Damages,
 
 § 1029 (1988).
 
 See also Bortner v. Gladfelter,
 
 302 Pa.Super. 492, 448 A.2d 1386 (1982);
 
 Mueller v. Brandon,
 
 282 Pa.Super. 37, 39-40, 422 A.2d 664, 665 (1980);
 
 Morris v. Peckyno,
 
 202 Pa.Super. 490, 492, 198 A.2d 396, 397 (1964).
 

 As noted by the Pennsylvania Supreme Court in
 
 Elza v. Chovan,
 
 396 Pa. 112, 152 A.2d 238 (1959):
 

 It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury’s.
 

 Id.
 
 at 115, 152 A.2d at 240.
 

 “Where the trial court
 
 grants
 
 a new trial on the ground of inadequacy the appellate courts will not interfere in the ab
 
 *51
 
 sence of a gross abuse of discretion.... When the trial court
 
 refuses
 
 relief against an allegedly inadequate verdict, the appellate court
 
 will exercise even greater caution in reviewing its action.” Mueller v. Brandon,
 
 282 Pa.Super. 37, 41, 422 A.2d 664, 666 (1980) (emphasis in original) (quoting
 
 Paustenbaugh v. Ward Baking Co.,
 
 374 Pa. 418, 420-421, 97 A.2d 816, 818 (1953)).
 

 This narrow standard of review stems from the nature of the entire judicial process. The jury and trial judge are clearly in the best position to evaluate the evidence. They have the opportunity to look into the eyes of the litigants, and evaluate the veracity of the witnesses’ statements. They also have the benefit of viewing the photographic record, and viewing the damage done to victims presented at the time of trial. Further, the reviewing court has no way of knowing how or why a jury reached their verdict in a given case, the presence of passion, partiality, or corruption on the part of the jury, or whether the jury disregarded instructions, acted under misapprehension or mistake.
 
 Mueller,
 
 282 Pa.Super. at 39-40, 422 A.2d at 665. The reviewing court must look at the entire record to see if “the injustice of the verdict stand[s] forth like a beacon.”
 
 Elza,
 
 396 Pa. at 118, 152 A.2d at 241, or, as Justice Musmanno eloquently stated, when “the figure of Justice totters on her pedestal.”
 
 Lupi v. Keenan,
 
 396 Pa. 6, 16, 151 A.2d 447, 453 (1959) (Musmanno, J., dissenting).
 

 When the jury’s verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
 

 Id.
 
 at 15-16, 151 A.2d at 452.
 

 Generally, victims are entitled to be compensated for all of their losses caused by negligence of another. However, not every injury results in compensable pain.
 
 Boggavarapu v. Ponist,
 
 518 Pa. 162, 166-67, 542 A.2d 516, 518 (1988);
 
 Hawley v. Donahoo,
 
 416 Pa.Super. 469, 470-71, 611 A.2d 311, 312 (1992). In
 
 Boggavarapu,
 
 the Pennsylvania Supreme Court stated that injuries which are obviously accompanied by pain include a broken bone, stretched muscle, twist of skeletal
 
 *52
 
 system, injury to nerve, organ, or function, and all consequences of medical science and common experience as sources of pain and suffering.
 
 Boggavarapu,
 
 518 Pa. at 162, 542 A.2d at 518. But the jury, having seen and heard the plaintiff, her doctor, and her other witnesses is “not required to accept everything or anything the plaintiff and her doctor [or other witnesses] said, even if their testimony was uncontradicted.”
 
 Bronchak v. Rebman,
 
 263 Pa.Super. 136, 140-41, 397 A.2d 438, 440 (1979).
 

 In the instant case, the Nudelmans contend that the jury award was inadequate and against the weight of the medical evidence. We disagree.
 

 In
 
 Karcesky v. Laria,
 
 382 Pa. 227, 114 A.2d 150 (1955), the Pennsylvania Supreme Court awarded $5,000.00 to two pedestrians struck by an automobile. One pedestrian spent seventeen days in the hospital with a fractured left clavicle and numerous contusions. The other pedestrian spent seventy-five days in the hospital for fractured teeth, sacrum, pelvis, and left fibula. The Pennsylvania Supreme Court denied the pedestrians’ motion for a new trial. The court found the verdict to be adequate as a compromise verdict based upon conflicting testimony on negligence.
 

 In
 
 Bronchak, supra,
 
 this court, found the verdict of $63.30 did not warrant a new trial when the plaintiff’s vehicle was struck by another vehicle. This court did recognize that the verdict was low, but concluded that since evidence of a preexisting condition of calcium deposits and cervical arthritis was presented at trial, the jury could reasonably conclude that these pre-existing injuries were more responsible for the plaintiff’s neck pain than the accident. Thus, this court denied a motion for a new trial.
 

 Not all jury verdicts, however, are upheld on appeal. In
 
 Deitrick v. Karnes,
 
 329 Pa.Super. 372, 478 A.2d 835 (1984), for example, this court found that damages awarded to a plaintiff were inadequate. The jury awarded the plaintiffs, Robert and Jane Deitrick, $500.00 for pain, suffering, and lost wages, while Jane Deitrick was awarded zero damages for loss of
 
 *53
 
 consortium. The jury found the plaintiff 50% negligent. Robert Deitrick suffered a fractured vertebra in a boating accident. He was required to stay in bed for lengthy periods of each day, for three months. Once the plaintiff returned to work, he could only work on a limited schedule because of the pain. Further, he was given prescriptions for muscle relaxarás and fitted with a corset. In
 
 Mueller, supra,
 
 the plaintiff was involved in an automobile accident. She was thrown against the inside windshield of a car, and was rendered unconscious. The plaintiff spent three days in the hospital and was diagnosed with a fractured ankle, cerebral concussion, and contusions of the knees.
 
 Id.
 
 282 Pa. Super. at 39-40, 422 A.2d at 665. The plaintiff received a nonwalking cast to the left leg. Half of her left eyebrow was gouged out, which resulted in a permanent scar above the left eye. The plaintiff also underwent surgery for a fractured nose which she received in the accident. There was no mention of pre-existing conditions of any kind. Also, liability was not in dispute. In this case we concluded that since the appellant’s pain was not caused by pre-existing injuries, liability was conceded, and the evidence of injury was objective and uncontradicted, an award for $663.00 in damages was inadequate.
 

 In the instant case, Shirley Nudelman had osteoarthritis in both knees prior to the accident. The issue of liability was hotly contested, as evidenced by the jury’s 50% comparative negligence determination. Shirley Nudelman’s injuries were a combination of objective and subjective injuries. She received a fractured toe, damage to the saphenous nerve in her left leg and left knee, an indentation in her skin on the inside of her left knee, and torn cartilage in her left knee. The fractured toe healed fully. The damage to the saphenous nerve and the indented patch of skin will be permanent injuries, as well as the torn cartilage in her left knee. She did not stay in the hospital overnight as a direct result of the accident. Only after receiving medication, which caused her to have pancreatitis and ulcers, did she have to stay in the hospital for three days. She did not have surgery nor did she receive a cast. She also did not receive crutches, a walker, or any other
 
 *54
 
 device to aid her in walking. Further, at no time was Mrs. Nudelman restricted from doing activities of any kind by the hospital staff, or her own doctors. The combination of the pre-existing condition of osteoarthritis, the fact that liability was hotly contested, and the type of injuries involved in the instant case more closely matches those factors found in
 
 Bronchak
 
 and
 
 Karcesky,
 
 where the courts denied a motion for a new trial.
 

 In
 
 Bortner v. Gladfelter,
 
 302 Pa.Super. 492, 448 A.2d 1386 (1982), this court set forth five considerations to determine whether a verdict should be set aside as inadequate.
 

 (1) the verdict awarded in case indicates passion prejudice, partiality, or corruption on the part of the jury, or
 

 (2) the verdict reveals that the jury either disregarded or misapprehended the instructions by the court, or
 

 (3) the verdict awarded bears no reasonable relation to the losses sustained by the plaintiff, or
 

 (4) the verdict evidenced a failure of justice to the plaintiff, or
 

 (5) the verdict is so inadequate that it should not be permitted to stand.
 

 Id.
 
 at 496, 448 A.2d at 1389.
 

 After a thorough review of the record, this court finds no evidence that the jury was influenced by passion, prejudice, partiality, or corruption in reaching their verdict. By analyzing the instructions of the trial court, it is clear that the jury neither disregarded nor misapprehended the instructions of the court. The jury first found that the plaintiff, Shirley Nudelman, and the defendant, Kevin Gilbride, were both fifty percent comparatively negligent. The judge then properly instructed the jury to award damages to Shirley and Samuel Nudelman without factoring in the comparative negligence of the plaintiff. The jury followed the judge’s instructions, and awarded to Shirley Nudelman $5,000.00 for past, present, and future pain and suffering. The trial judge found that this verdict was reasonable in relation to the proven damages. We also agree that this verdict for $5,000.00 for past, present, and
 
 *55
 
 future pain adequately reflected the damages proven by the plaintiffs. This verdict does not evidence a failure of justice to the plaintiff, nor is the verdict so inadequate that it should not stand.
 

 The Nudelman’s final issue states that the jury’s verdict was inadequate and against the weight of the evidence in regard to Samuel Nudelman’s loss of consortium. In determining whether the jury’s award was inadequate and against the weight of the evidence in the instant case, we look to the unique facts, and review the extent of the deprivation to Samuel Nudelman and the disruption to the Nudelman’s family life.
 
 Burns v. Pepsi-Cola Metropolitan Bottling,
 
 353 Pa.Super. 571, 576-78, 510 A.2d 810, 813 (1986). The deprivation was calculated by the jury evaluating testimony regarding the aid, assistance, comfort, and society Shirley Nudelman provided to Samuel Nudelman prior to the accident.
 

 This court addressed the issue of loss of consortium in
 
 Deitrick, supra.
 
 There, we found that the award of zero damages to the wife for loss of consortium was “shocking and inadequate.”
 
 Deitrick,
 
 329 Pa.Super. at 380, 478 A.2d at 839. In reaching this conclusion, this court pointed to the fact that the wife was forced to sleep on the couch in the living room due to her husband’s continual moaning as a result of the pain from the accident. The husband was unable to provide his wife assistance at home, in the form of cooking, taking out the garbage, mowing the lawn, and moving heavy equipment at her gift shop. This court also focused on the fact that Deitrick’s wife worked long hours at her shop. “[Robert] Deitrick’s inability to perform these chores was particularly significant since Jane Deitrick owned a gift and craft shop which required her attention for long hours every day.”
 
 Id.
 
 at 380-81, 478 A.2d at 839. In
 
 Deitrick,
 
 this court concluded that if the evidence of damages was contradicted by the defense, then the jury was justified in determining the credibility of witnesses, and in returning nominal damages.
 
 Id.
 
 at 380-82, 478 A.2d at 839. This court found, however, that the damages were uncontradicted and awarded a new trial.
 

 
 *56
 
 In the instant case, Samuel Nudelman testified that he was a retired carpet salesman at the time of the accident. He further testified that he had to clean the house, wash the floors, and drive his wife to doctors appointments. It was revealed on cross-examination that Samuel Nudelman had never done any housework in his thirty six years of marriage with Shirley, prior to the time of the accident. Samuel Nudelman also claimed that it was a burden to drive his wife to doctors appointments. He admitted however, that his wife did not drive prior to the accident. Shirley and Samuel Nudelman were not prevented from sleeping together as a result of the accident. Additionally, Samuel Nudelman claimed that he and his wife could not walk around the lake as many times after the accident as before the accident, and that she could not attend the theater with him. Dr. Malloy, the plaintiffs own witness, stated that Shirley Nudelman never appeared to have problems walking during doctors appointments, nor did she mention any ambulatory problems to him. Following the reasoning in
 
 Deitrick,
 
 since the damages to Samuel Nudelman were contradicted by the defendant, the jury was justified in evaluating the credibility of the witnesses and awarding nominal damages. Damages for loss of consortium have no market value, and the amount awarded for loss of consortium is left to the sound judgment and common sense of the jury.
 
 Mueller,
 
 282 Pa.Super. at 41-43, 422 A.2d at 666. In the instant case, this court recognizes that the jury used sound judgment and common sense in considering Samuel Nudelman’s claim for loss of consortium.
 

 We are not shocked by the jury’s verdict nor are we shocked by the trial court’s refusal to grant a new trial. After analyzing the entire record, the injustice of the verdict does not “stand forth like a beacon.”
 
 Elza, supra.
 
 Therefore, we affirm the trial court’s denial of a motion for a new trial.
 

 Judgment Affirmed.
 

 [1]
 

 . In the absence of entry of judgment on a verdict, "we have repeatedly advised the profession that an order refusing a new trial is interlocutory and unappealable,” and that such an appeal should not be entertained until a final judgment is entered.
 
 Dennis v. Smith,
 
 288 Pa.Super. 185, 186, 431 A.2d 350, 351 (1981);
 
 see
 
 Pa.R.A.P. 301. Here, the Nudelmans filed their notice of appeal on December 17, 1993. Pursuant to a per curiam order of this court, final judgment in this matter was entered on July 22, 1994. “A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.” Pa.R.A.P. 905(a). While the verdict in this case was reduced to judgment after the notice of appeal was filed, the appeal is properly before this court.