667 A.2d 240

**Roy A. RAPP and Margaret Rapp, H/W**

v.

**Ronald J. LORCH and The Equitable Life Assurance Society of the United States.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1995.

Filed Nov. 9, 1995.

460

Ralph D. Friedman, Jenkintown, for appellant.

Joseph V. Cardona, Philadelphia, for appellees.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

Ronald J. Lorch appeals from the September 16, 1994 entry of judgment following a nonjury verdict in appellees' favor. The verdict awarded appellees twenty-five percent of all insurance commissions paid to appellant on appellees' referrals, as determined by an independent accountant to be appointed in accordance with the verdict. The essential facts of this case are as follows.

In 1978, the parties entered into an oral agreement under which appellee/husband, Roy A. Rapp and his partner, Edmund F. Garno, would refer customers to appellant, a life insurance agent. The agreement also provided that the three individuals would equally split the commissions paid on any policy sales. In 1979, the arrangement was reduced to writing because appellee/husband and Garno were not receiving their share of the commissions from appellant as quickly as they would have liked. Also, appellee/husband and Garno had their wives licensed with appellant's company, Equitable Life Assurance, so that commissions could be paid directly, rather than through appellant. The arrangement continued until 1985, when appellee/husband and Garno decided to terminate their business relationship. Thereafter, the dealings between appellees and appellant continued. Beginning in 1987, appellant began to sell a new insurance product, variable life

insurance, which required a special license not possessed by appellees, although appellee-husband had been licensed in the past. In 1988, appellee-wife's license with Equitable was terminated. Also in 1988, appellee/husband discovered that appellant had written both whole life insurance policies and variable life insurance policies on appellees' referrals without paying to them a commission split. Appellees then filed suit for an accounting of commissions due on the sales. The trial court granted the accounting and awarded to appellees twenty-five percent of any discovered commissions. This appeal followed.

■ Appellant first claims that the agreement, as it relates to variable life insurance, was "illegal and thus unenforceable pursuant to Pennsylvania and Federal law because the appellees were not properly licensed[.]" (Appellant's brief at p. 3.) Thus, appellant argues he should not be held to the contract he admits executing because appellees were not licensed to sell variable life insurance. In support of this argument, appellant cites 31 Pa.Code § 82.81(a), which provides as follows:

§ 82.81. QUALIFICATIONS TO SELL VARIABLE LIFE INSURANCE.

(a) No person may sell or offer for sale in this Commonwealth a variable life insurance policy unless the person is an agent and has filed with the Commissioner, in a form satisfactory to the Commissioner, evidence that the person holds a license or authorization which may be required for the solicitation or sale of variable life insurance.

Appellant also cites, as follows, Restatement of the Law of Contracts, 2d, § 181:[1]

Section 181 provides:

"If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if

1. Although appellant does not cite any authority adopting section 181 as Pennsylvania law, we will address the argument.

  (a) the requirement has a regulatory purpose, and

  (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement."

■ The provisions cited by appellant are, on their face, inapplicable to the instant litigation. Section 82.81 applies only to unlicensed individuals who "sell or offer for sale" insurance policies. Similarly, the "act" contemplated by section 181 of the Restatement, when applied to this case, is the sale of insurance by "a party prohibited from doing [so] because of his failure to comply with a licensing ... requirement...." The difficulty with appellant's argument that these sections preclude enforcement of the agreement is that he does not and could not claim that appellees "sold or offered for sale" any insurance. Instead, appellant claims that the "public policy" behind these provisions "outweighs the interest in enforcement of the contract between the parties." (Appellant's brief at 10.) However, as appellant's own insurance expert testified, the "public policy" advanced by these provisions is the preclusion of insurance sales to the public by unlicensed, and therefore untrained, inexperienced and possibly unscrupulous individuals (N.T., 1/10/94, pp. 124–125, 134–135.) Instantly, all the sales were made by a licensed and highly experienced agent, namely, appellant. Thus, the public policy concerns of the provisions cited by appellant were satisfied and do not operate to void the otherwise enforceable agreement entered by the parties.

■ Appellant next claims the trial court erred "in failing to find that the appellees abandoned their rights to claim commissions from appellant because the appellees by their own actions caused the termination of their commission contract with the underwriter." (Appellant's brief at 12.) In essence, appellant claims that the underlying agreement between the parties "ceased", (Appellant's brief at 13), when appellee/husband's license to sell variable life insurance lapsed and when appellee/wife's license with Equitable was terminated. However, since the licensing of appellees was independent of and

irrelevant to the underlying contract between the parties, appellant's argument is flawed. As noted, appellee/wife became licensed merely in order to expedite performance of the agreement and the termination of her license could not therefore operate to nullify the agreement. This is clearly emphasized by the fact that the parties performed under the agreement *prior* to appellee/wife's licensing. Moreover, the lapse of appellee/husband's license to "sell or offer for sale" variable life insurance did not terminate appellees' rights under the contract to receive commission splits when appellant, a licensed agent, sold the product. (See the foregoing discussion of 31 Pa.Code § 82.81.) In short, the licensing of appellees had no bearing on appellant's duties under the agreement. Finally, we find appellant's argument disingenuous. If appellant was truly concerned with the licensing status of appellees, he would have informed them of his continued sales to appellees' referrals and afforded them the opportunity to become relicensed. Appellant's failure to so inform appellees cannot now operate to validate his surreptitious retention of commission splits rightfully owed to them.

Appellant's final claims challenge the trial court's Order on the basis that it fails to exclude certain commission splits due on certain customers. These claims fail. Initially, the fact that the trial court ordered an accounting "of all commissions paid to defendant Lorch as determined by an [independent] accountant", Order of 4/15/94, demonstrates that the court was unable to determine whether and for which customers commission splits were due. Thus, it would have been improper for the court to specifically exclude or include any individuals or any commissions. Further, appellant's bases of appeal are, in reality, challenges to the weight of the evidence upon which the court ordered an accounting. As such, the arguments address a matter within the sound discretion of the trial court, *Thompson v. City of Phila.*, 507 Pa. 592, 493 A.2d 669 (1985), and cannot succeed unless the court's verdict "shock[s] one's sense of justice", *Nudelman v. Gilbride*, 436 Pa.Super. 44, 647 A.2d 233 (1994). Instantly, we find that the court's Order of an accounting was the only

appropriate response to the conflicting and incomplete evidence presented at trial. Hence, appellant's final claims fail.

Based on the foregoing, we affirm the September 16, 1994 entry of judgment following a verdict in favor of appellees.

Judgment affirmed.